# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, the STATES of CALIFORNIA, FLORIDA, GEORGIA, MICHIGAN, TENNESSEE, and WASHINGTON, ex rel. MICHAEL MULLEN,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CARDINAL HEALTH, INC., CARDINAL HEALTH SPECIALTY SOLUTIONS GROUP, CARDINAL HEALTH 108, LLC, CARDINAL HEALTH 118, LLC, TENNESSEE ONCOLOGY, PLLC, CALIFORNIA CANCER ASSOCIATES FOR RESEARCH AND EXCELLENCE, INC., BIRMINGHAM HEMATOLOGY AND ONCOLOGY ASSOCIATES, LLC, ONCOLOGY SPECIALTIES, PC, TENNESSEE CANCER SPECIALISTS, PLLC, SOUTH CAROLINA ONCOLOGY ASSOCIATES, PA, DAYTON PHYSICIANS, LLC, MICHIGAN HEALTHCARE PROFESSIONALS, PC, NORTHWEST MEDICAL SPECIALTIES, PLLC, and HEALTH FIRST MEDICAL, LLC,<br><br>                    Defendants. | **Civil Action No. 19-cv-12488-IT** |

## BIRMINGHAM HEMATOLOGY AND ONCOLOGY ASSOCIATES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT .................................................................................................................... 2

I.     Relator fails to adequately allege scienter. ................................................. 2

     A.    Cardinal's Settlement in 2008 .......................................................... 4

     B.    Warnings from AmerisourceBergen ................................................. 7

     C.    Marketing Practices of Cardinal's Sales Representatives ................... 8

     D.    HHS-OIG Guidance ........................................................................ 9

     E.    Allegations Missing from the Amended Complaint .......................... 10

II.    Alabama Oncology Should be Severed from this Case as Improperly Joined and Its Case Transferred to the Northern District of Alabama. ............................. 11

     A.    Alabama Oncology is Misjoined under Rule 20 ................................ 12

     B.    The Court should transfer any claims against Alabama Oncology to the Northern District of Alabama. .......................................................... 15

CONCLUSION ................................................................................................................. 16

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alston v. Town of Brookline, Mass.*,
    No. CV 15-13987-GAO, 2016 WL 5745091 (D. Mass. Sept. 30, 2016) ...............................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................................3

*U.S. ex rel. Banigan v. Organon USA Inc.*,
    No. 07-12153-RWZ, 2016 WL 10704126 (D. Mass. Aug. 23, 2016)..................................3, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 554 (2007)...........................................................................................................9

*Bos. Post Partners II, LLP v. Paskett*,
    No. 15-13804-FDS, 2016 WL 3746474 (D. Mass. July 8, 2016)...........................................16

*Botero v. Commonwealth Limousine Serv. Inc.*,
    302 F.R.D. 285 (D. Mass. 2014).....................................................................................13, 15

*Bryan v. United States*,
    524 U.S. 184 (1998)...........................................................................................................3

*U.S. ex rel. Carpenter v. Abbott Lab's, Inc.*,
    723 F. Supp. 2d 395 (D. Mass. 2010) ...............................................................................3

*U.S. ex rel. Complin v. N.C. Baptist Hosp.*,
    818 F. App'x 179 (4th Cir. 2020) .....................................................................................11

*Foisie v. Worcester Polytechnic Inst.*,
    967 F.3d 27 (1st Cir. 2020)................................................................................................4

*Frith v. Whole Foods Mkt., Inc.*,
    38 F.4th 263 (1st Cir. 2022)..............................................................................................4, 9

*U.S. ex rel. Ge v. Takeda Pharma. Co.*,
    737 F.3d 116 (1st Cir. 2013)..............................................................................................8

*U.S. ex rel. Gohil v. Sanofi U.S. Servs. Inc.*,
    500 F. Supp. 3d 345 (E.D. Pa. 2020) ...............................................................................10

*U.S. ex rel. Hart v. McKesson Corp.*,
    No. 15-CV-0903 (RA), 2022 WL 1423476 (S.D.N.Y. May 5, 2022) ...............................10, 11

*U.S. ex rel. Jones v. Brigham & Women's Hosp.*,
    678 F.3d 72 (1st Cir. 2012)................................................................................................2

*U.S. ex rel. Loughren v. Unum Grp.*,
    613 F.3d 300 (1st Cir. 2010)................................................................14

*U.S. ex rel. Mackillop v. Grand Canyon Educ., Inc.*,
    No. CV 18-11192-WGY, 2022 WL 4084444 (D. Mass. Sept. 6, 2022)..................................14

*U.S. ex rel. Martino-Fleming v. S. Bay Mental Health Ctrs.*,
    540 F. Supp. 3d 103 (D. Mass. 2021) .....................................................10

*Metzler Asset Mgmt. GmbH v. Kingsley*,
    928 F.3d 151 (1st Cir. 2019)................................................................5

*U.S. ex rel. Ondis v. City of Woonsocket, R.I.*,
    480 F. Supp. 2d 434 (D. Mass. 2007) .....................................................16

*Patrick Collins, Inc. v. Does 1-38*,
    941 F. Supp. 2d 153 (D. Mass. 2013) ..................................................13, 15

*U.S. ex rel. Pervez v. Beth Israel Med. Ctr.*,
    736 F. Supp. 2d 804 (S.D.N.Y. 2010).....................................................6

*Robinson v. Mortg. Elec. Registration Sys., Inc.*,
    No. CV 19-2185 PSG (ASX), 2019 WL 2491550 (C.D. Cal. June 14, 2019) .......................14

*United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*,
    874 F.2d 20 (1st Cir. 1989)................................................................3

*United States v. Gen. Hosp. Corp.*,
    394 F. Supp. 3d 174 (D. Mass. 2019) .....................................................11

*United States v. President and Fellows of Harvard Coll.*,
    323 F. Supp. 2d 151 (D. Mass. 2004) .....................................................6

*United States v. Sosa*,
    777 F.3d 1279 (11th Cir. 2015) ...........................................................3

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
    579 U.S. 176 (2016)........................................................................2

*U.S. ex rel. Wilson v. Bristol-Myers Squibb, Inc.*,
    No. CA 06-12195-MLW, 2013 WL 3327317 (D. Mass. June 27, 2013) .............................16

**Statutes**

28 U.S.C. § 1404...........................................................................16

31 U.S.C. § 3729(a)(1)(A)–(B)................................................................2

31 U.S.C. § 3729(b)(1) ......................................................................2

42 U.S.C. § 1320a–7b ..........................................................................................................3

False Claims Act .......................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................................................3

Fed. R. Civ. P. 9 ................................................................................................................3

Fed. R. Civ. P. 9(b) .......................................................................................................3, 5

Fed. R. Civ. P. 20 ...............................................................................................12, 13, 14, 15

Fed. R. Civ. P. 20(a)(2) .....................................................................................................13

Fed. R. Civ. P. 21 .............................................................................................................13

Press Release, DOJ, Justice Department's False Claims Act Settlements and
      Judgments Exceed $5.6 Billion in Fiscal Year 2021 (Feb. 1, 2022)
      https://www.justice.gov/opa/pr/justice-department-s-false-claims-act-
      settlements-and-judgments-exceed-56-billion-fiscal-year ..........................................5

Press Release, DOJ, Ohio-Based Cardinal Health Inc. to Pay U.S. $8 Million to
      Resolve False Claims Act Allegations (Apr. 21, 2011),
      https://www.justice.gov/opa/pr/ohio-based-cardinal-health-inc-pay-us-8-
      million-resolve-false-claims-act-allegations ..............................................................7

## INTRODUCTION

Defendant Birmingham Hematology and Oncology Associates, LLC ("Defendant") specializes in the treatment of cancer patients in Birmingham, Alabama—nearly 1,200 miles from the halls of this Court. Relator, a former executive of Cardinal Health, Inc.—which is based in Dublin, Ohio—has accused Defendant of submitting false claims to Medicare based on violations of the Anti-Kickback Statute. But Relator's allegations suffer from a fatal pleading deficiency: Relator alleges no factual basis that could plausibly establish that Alabama Oncology knowingly and willfully violated the Anti-Kickback Statute ("AKS"). Additionally, Relator has improperly joined Alabama Oncology with multiple other defendants, which will result in a case management and trial nightmare for the parties and the Court. Thus, if this case does proceed, Alabama Oncology should be severed and the case against it transferred to the U.S. District Court for the Northern District of Alabama.

Relator's scienter allegations boil down to a single idea—namely, that information generally available to the public should have put Alabama Oncology on notice that it was accepting illegal kickbacks. Yet the Amended Complaint does not contain a single allegation that Alabama Oncology even knew about this information. Instead, Relator hinges his scienter allegations on a chain of three unfounded and far-reaching assumptions: (1) that Alabama Oncology knew about this information simply because it was generally available to the public, (2) this information somehow tipped off Alabama Oncology that the payments it was receiving were illegal kickbacks; and (3) despite knowing it was illegal to do so, Alabama Oncology nevertheless knowingly and willfully accepted the kickbacks. Such thin, conclusory, and speculative inferential leaps fall far short of Relator's pleading obligations, especially considering that the AKS's heightened scienter requirements apply here.

1

Relator has also repeatedly and improperly grouped the multiple defendants in this case together as the Practice Defendants in a futile attempt to create identity among diverse and factually distinct scenarios scattered throughout the United States.  As discussed in the Omnibus Memorandum of Law filed herewith and also in support of Alabama Oncology's Motion to Dismiss, Relator's conspiracy claims must be dismissed.  Without such claims, Relator merely has five distinct and factually different cases against physician practice groups spread from coast-to-coast.  Alabama Oncology is thus improperly joined in this case and should be severed and transferred to the Northern District of Alabama.

Against this backdrop, Alabama Oncology moves to dismiss Relator's Amended Complaint for failure to state a claim upon which relief can be granted since it fails to allege that Alabama Oncology knowingly and willfully accepted illegal kickbacks.  In the event the Court does not dismiss this matter, Alabama Oncology should be severed from this case as joinder is improper, and its case should be transferred to the Northern District of Alabama.

## ARGUMENT

### I.    Relator fails to adequately allege scienter.

To establish a prima facie claim under the False Claims Act ("FCA") , a relator must show that the defendant "knowingly" presented a false or fraudulent claim to the United States, or "knowingly" made a false statement that is material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(A)–(B). A defendant acts "knowingly" if it: (1) had actual knowledge of the information; (2) acted in deliberate ignorance of the truth or falsity of the information; or (3) acted in reckless disregard of the truth or falsity of the information. *Id.* § 3729(b)(1). Scienter is a rigorous requirement that courts must strictly enforce. *U.S. ex rel. Jones v. Brigham & Women's Hosp.*, 678 F.3d 72, 85 (1st Cir. 2012) ("FCA liability continues to be circumscribed by 'strict enforcement of the Act's materiality and scienter requirements.'"); *see also Universal Health*

2

*Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 192 (2016) (labeling the scienter requirement as "rigorous").

The scienter requirement is heightened when a relator predicates his FCA claims on violations of the AKS. In such cases, the relator must adequately allege the specific intent required to violate the AKS, *i.e.*, that the defendant knowingly and willfully participated in the exchange of illegal remunerations. *See U.S. ex rel. Carpenter v. Abbott Lab's, Inc.*, 723 F. Supp. 2d 395, 404 (D. Mass. 2010) (applying "knowing and willful" scienter standard to FCA claims predicated on AKS violations); *see also U.S. ex rel. Banigan v. Organon USA Inc.*, No. 07-12153-RWZ, 2016 WL 10704126, at *3 (D. Mass. Aug. 23, 2016) (same). A "willful" act is one undertaken with a "bad purpose." *Bryan v. United States*, 524 U.S. 184, 191 (1998). To establish a willful violation, the relator must prove the defendant acted with knowledge that his conduct was unlawful. *Id.* at 191-92; *see also United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 33 (1st Cir. 1989). In other words, the relator must show the defendant acted with the specific intent to do something the law forbids. *United States v. Sosa*, 777 F.3d 1279, 1293 (11th Cir. 2015) ("In order to find that a person acted willfully in violation of § 1320a–7b, the person must have acted voluntarily and purposely, with the specific intent to do something the law forbids, that is with a bad purpose, either to disobey or disregard the law.") (quotation omitted).

Although plaintiffs may allege scienter generally under Rule 9(b), this is not a free pass for plaintiffs to allege zero facts that could plausibly support a showing of scienter. *Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009) ("Rule 9 merely excuses a party from pleading [scienter] under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8."). A plaintiff must allege more than a "sheer possibility" that the defendant acted unlawfully. *Id.* at 678. If the plaintiff's allegations of misconduct are equally

consistent with an "obvious alternative explanation," the plaintiff failed to allege a plausible cause of action and the claims must be dismissed. *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 275–76 (1st Cir. 2022) ("We cannot infer [illegality] based on factual allegations that are 'just as much in line with' the [legal] explanation we have identified."); *see also Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 52 (1st Cir. 2020) (noting "the proposition that the plausibility standard is not satisfied when allegations of misconduct are equally consistent with some innocent explanation").

Here, to successfully allege scienter, Relator must allege facts showing Alabama Oncology knew its business arrangement with Cardinal was illegal but knowingly and willfully entered the arrangement anyway. The scienter allegations offered by Relator fall far short of this pleading requirement. As explained below, Relator's factual allegations have nothing to do with Alabama Oncology, nor any other Practice Defendant for that matter. He instead alleges that information potentially available to the public or imparted to unnamed "providers" by one of Cardinal's competitors and/or Cardinal sales representatives "should have" put all of the "Practice Defendants" on notice. Doc. 95, Relator Am. Compl. ¶¶ 84, 92-93. These catch-all and conclusory allegations fail to allege that Alabama Oncology willfully acted with an unlawful purpose.

A.    *Cardinal's Settlement in 2008*

Relator first attempts to allege scienter based on the claim that Cardinal settled an FCA case in 2008 involving payments to community pharmacies. *See id.* ¶ 92.[1] Relator concludes that "[i]n publicly settling the matter, Cardinal Health plainly made clear that such payments are illegal kickbacks under the AKS and FCA." *Id.*

This theory suffers several fatal flaws. First, although the Amended Complaint alleges that news of this settlement was available to the public generally, there is no allegation that anyone at

---

[1] Strangely, Relator claims Cardinal settled this case in 2008 but cites a press release from April 21, 2011, that says Cardinal settled the case on the date of the press release.

Alabama Oncology actually knew about the settlement, let alone connected the settlement to Alabama Oncology's own purchases from Cardinal. Relator does not allege that a source told this information to Alabama Oncology, that Alabama Oncology learned this information on its own, or that Alabama Oncology had a practice of tracking these types of settlements. Simply put, the Amended Complaint alleges zero connection between this settlement and Alabama Oncology, and there is no alleged factual basis to impute this knowledge to Alabama Oncology. *See Metzler Asset Mgmt. GmbH v. Kingsley*, 928 F.3d 151, 161 (1st Cir. 2019) (citing case where plaintiff failed to allege scienter because there was no allegation that the "information . . . was directly communicated to the individual defendants").

Relator essentially urges this Court to assume Alabama Oncology had actual knowledge of the settlement simply because the settlement was publicly available. Such an assumption flouts common sense. This settlement is just one in a sea of FCA settlements that the DOJ enters into every year. *See* Press Release, DOJ, Justice Department's False Claims Act Settlements and Judgments Exceed $5.6 Billion in Fiscal Year 2021 (Feb. 1, 2022) https://www.justice.gov/opa/pr/justice-department-s-false-claims-act-settlements-and-judgments-exceed-56-billion-fiscal-year.

It would set a dangerous precedent to credit these conclusory allegations as sufficient for scienter. A plaintiff could attribute knowledge of all publicly available information to any defendant without alleging a connection between them. The mere existence of information in the public realm could subject defendants to the staggering penalties threatened under the FCA. "[W]hile Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. An ample factual basis must be supplied to support the charges." *U.S. ex rel. Pervez v. Beth Israel Med. Ctr.*, 736 F. Supp.

5

2d 804, 810–811 (S.D.N.Y. 2010) (quotation omitted). Relator cannot shirk his pleading obligations by pointing to public information and speculating that a defendant may have known about it.

Second, even if Alabama Oncology had some duty to track DOJ settlements—which it does not—simply missing the news of this settlement does not amount to anything more than an innocent mistake or neglect. Mere negligence is not enough even under the FCA, which requires at least reckless disregard, let alone sufficient under the AKS. *See United States v. President and Fellows of Harvard Coll.*, 323 F. Supp. 2d 151, 189 (D. Mass. 2004). Here, because Relator predicates his FCA claims on alleged violations of the AKS, he must allege facts showing that Alabama Oncology knowingly and willfully violated the law. Missing the news of another company's settlement does not equate willful engagement in illegal conduct.

Finally, even assuming Alabama Oncology had knowledge of Cardinal's prior settlement—which is not alleged in the Amended Complaint—the differences between the settlement and the instant case destroy any inference that the settlement put Alabama Oncology on notice about the potential illegality of its contracts with Cardinal. Relator alleges in a conclusory fashion that the settlement involves "nearly identical behavior to that described here," but he fails to allege any substantive information from the settlement, or the corresponding press release he cites. Relator Am. Compl. ¶ 92. Alabama Oncology therefore cites the press release's description of conduct in its entirety here:

> Today's settlement with the Dublin, Ohio-based pharmaceutical distributor resolves a lawsuit filed by former pharmacy owner R. Daniel Saleaumua and pharmacy consultant Kevin Rinne under the qui tam, or whistleblower provisions, of the False Claims Act. Mr. Saleaumua alleged that Cardinal paid him $440,000 in exchange for an agreement that he purchase from Cardinal prescription drugs for his pharmacies. Under the False Claims Act, private citizens can bring suit on behalf of the United States and share in any recovery. Together, Saleaumua and Rinne will receive $760,000 as their share of the government's recovery.

6

Press Release, DOJ, Ohio-Based Cardinal Health Inc. to Pay U.S. $8 Million to Resolve False Claims Act Allegations (Apr. 21, 2011), https://www.justice.gov/opa/pr/ohio-based-cardinal-health-inc-pay-us-8-million-resolve-false-claims-act-allegations. This press release contains no information about contracts, no information about discounts, and no information about "upfront payments." There is simply no way for Alabama Oncology to discern from this press release that payments it received from Cardinal may have constituted illegal kickbacks. The mere existence of this settlement and the press release is not enough to show that Alabama Oncology knowingly and willfully participated in an illegal kickback scheme. As a result, Relator fails to adequately allege scienter on this basis.

       B.     *Warnings from AmerisourceBergen*

Relator next claims that Alabama Oncology possessed the requisite scienter because AmerisourceBergen—one of Cardinal's competitors—told unnamed "providers" that Cardinal's "upfront payments" were illegal. Relator Am. Compl. ¶ 93. Relator offers the unfounded conclusion that "[t]hese statements should have further put the Practice Defendants on notice of the illegality of this scheme." *Id.*

Relator again fails to allege that anyone told Alabama Oncology anything. Although he generally alleges that AmerisourceBergen spoke with "providers," he does not allege that AmerisourceBergen spoke with Alabama Oncology specifically, that AmerisourceBergen had a pre-existing relationship with Alabama Oncology, or even that AmerisourceBergen ever attempted to sell drugs to Alabama Oncology. Indeed, Relator specifically names other defendants that did business with AmerisourceBergen, yet Alabama Oncology is absent from this list. *Id.* ¶ 94. There is zero connection alleged between AmerisourceBergen and Alabama Oncology in the Amended Complaint. Relator cannot overcome this deficiency by improperly grouping the defendants

together in a catch-all allegation and referencing enigmatic conversations with unnamed "providers."

C.      *Marketing Practices of Cardinal's Sales Representatives*

For his third scienter theory, Relator alleges the physician practices should have known that "upfront payments" were illegal kickbacks because Cardinal's sales representatives touted the payments as a benefit of doing business with Cardinal. Relator Am. Compl. ¶ 84. Mullen states in a conclusory fashion that Practice Defendants "knew or should have known these upfront payments were intended to induce changes in their purchasing behavior." *Id.*

Relator again speculates with zero factual basis that this information was communicated to Alabama Oncology. Relator does not allege that Cardinal's sales representatives made these representations to Alabama Oncology specifically, nor does he allege when these representations were made or who even made these representations. FCA relators are required to allege the "who, what, when, where, and how" of alleged fraud, and Relator cannot rely on vague and conclusory allegations to skirt this burden. *U.S. ex rel. Ge v. Takeda Pharma. Co.*, 737 F.3d 116, 123 (1st Cir. 2013).

Moreover, this theory fails to show that Alabama Oncology knew the payments were potentially illegal. Relator merely alleges that the Practice Defendants should have known these upfront payments were designed to "induce changes in their purchasing behavior." Relator Am. Compl. ¶ 84. But that is the very purpose of marketing—to drum up new business. Touting these payments as a business benefit does not equate to allegations of illegal kickbacks. Quite the contrary from suggesting illegality, it is more plausible to infer that Cardinal's open marketing of the payments led Alabama Oncology to believe that such payments were legal. Cardinal is one of the largest drug distributors in the country. It has extensive compliance programs and internal legal departments. Given Cardinal's outsized presence in this market, it is more plausible to assume that

Cardinal's open advertisement of these payments *undermines* an inference of illegality. Where there is an "obvious alternative explanation" for the defendant's conduct that is more plausible than the plaintiff's theory of illegality, the court must dismiss the case. *Frith*, 38 F.4th at 276 (affirming dismissal when plaintiff did not allege "any factual allegations pointing in [the insidious] direction and away from the 'obvious alternative explanation'").

       D.      *HHS-OIG Guidance*

Relator devotes considerable space in the Amended Complaint to guidance issued by HHS-OIG, *see* Relator Am. Compl. at ¶¶ 83–91, and yet, he fails to connect this guidance to any specific allegations regarding scienter. In the spirit of being thorough, Alabama Oncology will nevertheless address the implication that such guidance put the Practice Defendants on notice of the allegedly illegal nature of the Cardinal contracts.

Such an implication does not satisfy Relator's pleading burden because, once again, Relator merely cites publicly available information without alleging any connection between the information and Alabama Oncology. There is no allegation that Alabama Oncology trained its employees on the guidance, stored copies of the guidance in its files, or even knew about the guidance. *Cf. Banigan*, 2016 WL 10704126, at *3 (holding that scienter may be established when defendant's compliance policy evinced "ample familiarity" with the OIG guidance at issue). Relator has the burden to allege enough facts to nudge his claims across the line from conceivable to plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). He cannot dodge this pleading obligation by merely citing public information and hoping the Court imputes this knowledge to Alabama Oncology.

Even assuming Alabama Oncology should have known about this guidance—which is not alleged in the Amended Complaint—this still would not satisfy the level of scienter required here. Under the FCA, a plaintiff may show the requisite scienter by alleging that the defendant recklessly

disregarded applicable regulations and guidance. *See U.S. ex rel. Martino-Fleming v. S. Bay Mental Health Ctrs.*, 540 F. Supp. 3d 103, 132 (D. Mass. 2021) (stating that scienter may be present under the FCA where a health center may have recklessly disregarded Medicaid regulations). However, "[t]he FCA's scienter element is easier to meet than the AKS's scienter element: the FCA only requires recklessness or deliberate ignorance of illegality, while the AKS requires knowledge of illegality." *U.S. ex rel. Gohil v. Sanofi U.S. Servs. Inc.*, 500 F. Supp. 3d 345, 360 (E.D. Pa. 2020); *see also U.S. ex rel. Hart v. McKesson Corp.*, No. 15-CV-0903 (RA), 2022 WL 1423476, at *12 (S.D.N.Y. May 5, 2022) ("The majority of circuit courts to have addressed this issue, both before and after the 2010 amendment, have similarly recognized that the term 'willfully' requires knowledge that the relevant conduct is unlawful.") (citing *Bay State Ambulance*, 874 F.2d at 33). Specifically,

> [I]dentifying a policy that plausibly violates the AKS and alleging that a defendant had a general awareness of the laws regulating the pharmaceutical industry is not enough to establish scienter. There must be facts from which the Court can infer that Defendants knew the conduct was unlawful and proceeded with the business practice regardless.

*Hart*, 2022 WL 1423476, at *15. Here, Relator alleges no facts showing that Alabama Oncology knew about the guidance, let alone that the guidance caused Alabama Oncology to know that its business with Cardinal was unlawful yet proceed with the business anyway. Accordingly, the Court should decline to infer scienter on this basis.

     E.     *Allegations Missing from the Amended Complaint*

Finally, the tenuous basis on which Relator bases scienter is further highlighted by what the Amended Complaint lacks. Relator does not allege that Alabama Oncology's employees were concerned about potential regulatory violations, or that Alabama Oncology directed its employees to ignore potential violations. Nor does he allege that Alabama Oncology attempted to conceal the

"upfront payments."[2] Claims that survive dismissal typically include well-pleaded allegations of this nature, and their absence here underscores the weakness of Relator's scienter theories. *See U.S. ex rel. Complin v. N.C. Baptist Hosp.*, 818 F. App'x 179, 183-84 (4th Cir. 2020) (affirming dismissal when relator failed to allege these facts supporting scienter); *see also Hart*, 2022 WL 1423476, at *14-15 (listing cases and dismissing the AKS complaint on scienter grounds for failure to allege "actions taken to conceal the fraudulent scheme"). Like the dismissed complaint in *Hart*, Relator here alleged that Cardinal's "program was openly advertised and widely discussed both within the company and among its customers," and thus, the Amended Complaint "lack[s] even general allegations which suggest that [defendant] knew [its conduct] was unlawful—indeed, [relator's] description of [defendant's] conduct arguably suggests the opposite." *Id.* at 14.

In sum, the Amended Complaint is devoid of any factual allegations showing that Alabama Oncology *knowingly and willfully* engaged in illegal business with Cardinal. Beyond conclusory and speculative allegations, there is nothing in the Amended Complaint to infer that Alabama Oncology possessed the requisite scienter to violate the AKS, and accordingly, the Court should dismiss the claims against Alabama Oncology.

## II.    Alabama Oncology Should be Severed from this Case as Improperly Joined and Its Case Transferred to the Northern District of Alabama.

For the reasons stated above and in the Omnibus Memorandum, the Court should dismiss the Amended Complaint as to Alabama Oncology. However, even if the Court declines to dismiss the FCA allegations, Relator's failure to sufficiently allege conspiracy means that all of the Practice Defendants—many of which, including Alabama Oncology, have no connection to

---

[2] In fact, these alleged kickbacks were expressly included in the Letter of Commitment and amendments between Cardinal and Alabama Oncology. Mullen Am. Compl. ¶¶ 95-102; *cf. United States v. Gen. Hosp. Corp.*, 394 F. Supp. 3d 174, 190 (D. Mass. 2019) (holding that relator adequately pled scienter by alleging defendant actively concealed alleged fraud to avoid government detection).

Massachusetts—have been misjoined in this case. As a result, Alabama Oncology requests that the Court sever Alabama Oncology from this action and transfer the claims against this Defendant to the Northern District of Alabama, where venue is proper and appropriate for this Defendant.

A.   *Alabama Oncology is Misjoined under Rule 20.*

As required for proper joinder in this case, the allegations against Alabama Oncology do not relate to the same transaction, occurrence or series of transactions or occurrences as the other Practice Defendants.  As alleged, Alabama Oncology entered its own contracts with Cardinal, purchased the drugs it needed from Cardinal, provided its own services to its patients, and filed its own claims with Medicare.  Every element of the alleged AKS and FCA violations must be proved individually against Alabama Oncology pursuant to facts specific to Alabama Oncology.  Under such circumstances not only are the requirements for proper joinder not met, but the efficiencies motivating joinder of parties in a single action are non-existent.  In fact, litigation involving all of the Practice Defendants would be rife with waste and inefficiencies in discovery, and trial would be a confusing morass of evidence specific to multiple defendants, leading to extreme juror confusion.

Rule 20 addresses permissive joinder of defendants: "[p]ersons … may be joined in one action as defendants if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). And, where defendants are misjoined, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.

Relator relies significantly on his conspiracy claims to justify joinder of the Practice Defendants in this case.  Relator Am. Compl. ¶ 17 ("Each of the Physician Practice Defendants is properly joined to this suit because the allegations include participation in conspiracy with

12

Defendant Cardinal Health and questions of law and fact common to all Physician Practice Defendants will arise in this action."). As argued in the Practice Defendants' Omnibus Memorandum of Law, Relator's conspiracy claim is without merit and must be dismissed. Although joinder is improper even with the claims for conspiracy, dismissal of that claim nullifies Relator's own justification for joinder.

Relator's allegations demonstrate that the alleged FCA violations do not arise "out of the same transaction, occurrence, or series of transactions or occurrences" as required by Rule 20. This Court has interpreted Rule 20's "same transaction, occurrence, or series of transactions or occurrences" component to require that "the infringing acts share an aggregate of operative facts." *Botero v. Commonwealth Limousine Serv. Inc.*, 302 F.R.D. 285, 286 (D. Mass. 2014) (quotation omitted). Where the facts of a litigation are likely to "creat[e] scores of mini-trials involving different evidence and testimony" or "create significant logistical difficulties," *Patrick Collins, Inc. v. Does 1-38*, 941 F. Supp. 2d 153, 165 (D. Mass. 2013), the Court should dismiss or sever the claims.  In this case, Relator will have to conduct not only multiple mini-trials with individualized presentations of evidence against each Practice Defendant, but also engage in individualized discovery regarding facts relevant to each Practice Defendant.

Relator must prove each element of an FCA violation against every defendant.  To demonstrate an FCA violation, Relator must prove that: (1) a false or fraudulent claim relating to each Practice Defendant's business was submitted to the United States, (2) the purported falsity of each Practice Defendant's respective claim(s) was material to the United States's decision to make payment, (3) the purported falsity caused the submission of the claim(s), and, finally, (4) that each Practice Defendant individually possessed the requisite scienter. *See U.S. ex rel. Loughren v. Unum Grp.*, 613 F.3d 300, 307 (1st Cir. 2010); *see also U.S. ex rel. Mackillop v. Grand Canyon*

*Educ., Inc.*, No. CV 18-11192-WGY, 2022 WL 4084444, at \*17 (D. Mass. Sept. 6, 2022). The fact-finder will have to sift through, among other evidence, the payment terms in each of the Practice Defendants' allegedly illegal contracts; documents, testimony, and likely circumstantial evidence relating to what was known, thought, and believed about the payment terms by various employees and management across each of the Practice Defendants; and claims data submitted to Medicare. Little, if any, of this evidence will overlap.  There is no allegation that the Practice Defendants were in any way related.  They saw completely different patients in different geographic locations for different medical issues.

Allegations that the Practice Defendants each entered into contracts with Cardinal do not constitute the same transaction, occurrence, or series of transactions or occurrences under Rule 20. *See Robinson v. Mortg. Elec. Registration Sys., Inc.*, No. CV 19-2185 PSG (ASX), 2019 WL 2491550, at \*3 (C.D. Cal. June 14, 2019) (dismissing misjoined claims and holding that two plaintiffs entering into two different contracts involving the same defendant were not properly joined as the "circumstances surrounding the signing of those [contracts] and the interactions with [defendant] are too attenuated from each other").  The contracts on which Relator bases his FCA claims against Alabama Oncology are exclusively between Alabama Oncology and Cardinal, and the terms and any payments made thereunder will have to be analyzed against the AKS separately from the terms of any agreements between Cardinal and other defendants. *See* Relator Am. Compl. ¶¶ 95-102.  Additionally, each of the prescriptions and the related claims data allegedly tainted by the various contracts are similarly separate and unique. Grouping all defendants with different evidence for every element of an FCA violation would be the precise type of "significant logistical difficult[y]" which "would substantially prejudice the defendants" as this Court addressed in *Patrick Collins*, where the Court severed and dismissed claims against a variety of defendants. 941

F. Supp. 2d at 165. Joinder is improper and Alabama Oncology should be severed from this case should it go forward.

Even if Relator's claim for conspiracy is not dismissed, the misjoinder analysis is not altered. Although Relator claims, without factual basis, that each Practice Defendant conspired together and with Cardinal to violate the AKS, at best, the Amended Complaint merely alleges that each of the separate defendants individually violated the AKS, resulting in the submission of diverse, purportedly false claims across different time periods. Courts in this district do not find joinder warranted under these circumstances. *See Botero*, 302 F.R.D. at 287 (holding that joinder is not warranted where "defendants allegedly committed the exact same violation of the law in exactly the same way") (quotation marks omitted). Relator's conspiracy claims are bare-bones and insufficient to demonstrate a hub-and-spoke conspiracy as explained in the Omnibus Motion, but in any event, "joinder is inappropriate, even in the face of conspiracy allegations, when Rule 20 requirements are not met." *Alston v. Town of Brookline, Mass.*, No. CV 15-13987-GAO, 2016 WL 5745091, at *13 (D. Mass. Sept. 30, 2016).

  B. *The Court should transfer any claims against Alabama Oncology to the Northern District of Alabama.*

Once severed from this case, the District of Massachusetts is not the appropriate forum to adjudicate claims against a local physician practice group from Birmingham, Alabama. In fact, Relator supported his claims for proper venue on the thin reed of Cardinal's contact with Massachusetts by supplying providers— not even provider defendants in the case— in that state. Relator Am. Compl. ¶ 17. Even before Cardinal was out of the case, venue was merely based on the FCA's generous venue provisions, not an any rational basis that the forum is appropriate or convenient to the parties in the case. The case against Alabama Oncology should be severed and transferred to the Northern District of Alabama.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. In analyzing a request to transfer venue, courts in the First Circuit consider "(1) the relative convenience of the parties, (2) the convenience of the witnesses and location of documents, (3) any connection between the forum and the issues, (4) the law to be applied . . . (5) the state or public interests at stake," the interests of justice, and the balance of private and public interests implicated. *Bos. Post Partners II, LLP v. Paskett*, No. 15-13804-FDS, 2016 WL 3746474, at *10 (D. Mass. July 8, 2016). Although there is a presumption in favor of a plaintiff's choice of forum and the burden is on the defendant seeking transfer to demonstrate the foregoing factors, where most of the events giving rise to an FCA case occurred in a different forum and the convenience of witnesses leans toward a different forum, as is the case here, this Court finds transfer warranted. *See, e.g., id.*; *U.S. ex rel. Ondis v. City of Woonsocket, R.I.*, 480 F. Supp. 2d 434, 437 (D. Mass. 2007); *U.S. ex rel. Wilson v. Bristol-Myers Squibb, Inc.*, No. CA 06-12195-MLW, 2013 WL 3327317, at *4 (D. Mass. June 27, 2013).

For Alabama Oncology, witnesses, documents, claims data, and other evidence will be in Birmingham.  To the extent that Cardinal has relevant documents and witnesses, such evidence will likely be at its corporate offices in Ohio.  One place any evidence or witness will almost certainly not be is in Massachusetts.  Once severed, the case against Alabama Oncology must be transferred to the Northern District of Alabama.

## <u>CONCLUSION</u>

For all the foregoing reasons, Alabama Oncology respectfully submits that the Court should dismiss Relator's Amended Complaint, or sever Alabama Oncology from this case and transfer the claims against it to the Northern District of Alabama.

Dated: January 6, 2023

Respectfully submitted,


/s/ Jonathan H. Ferry
Dana C. Lumsden, Esq. [BBO# 631943]
Jonathan H. Ferry, Esq.*admitted pro hac vice
BRADLEY ARANT BOULT CUMMINGS LLP
214 North Tryon Street, Suite 3700
Charlotte, North Carolina 28202
(704) 338-6000 (Tel)
(704) 332-8858 (Fax)
dlumsden@bradley.com
jferry@bradley.com

COUNSEL for the DEFENDANT
BIRMINGHAM HEMATOLOGY
& ONCOLOGY ASSOCIATES, LLC

### **LCvR 7.1(a)(2) Certificate**

I hereby certify that Alabama Oncology conferred in good faith with Plaintiffs' counsel and that the parties were unable to resolve the disputes related to this motion.

/s/ Jonathan H. Ferry
Jonathan H. Ferry

## **CERTIFICATE OF SERVICE**

I hereby certify that this document was filed today through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that I will cause paper copies of this document to be sent by U.S. Mail to those indicated as non-registered participants on January 6, 2023.

/s/ Jonathan H. Ferry
Jonathan H. Ferry