# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, the STATES of CALIFORNIA, FLORIDA, GEORGIA, MICHIGAN, TENNESSEE, and WASHINGTON, *ex rel.* MICHAEL MULLEN,

Plaintiffs,

v.

CARDINAL HEALTH, INC., *et al.*,

Defendants.

Civil Action No. 19-cv-12488-IT

## OMNIBUS REPLY IN SUPPORT OF MOTIONS TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

Relator's Amended Complaint fails for multiple reasons, and Relator's Opposition (Dkt. 170) does nothing to rebut the Practice Defendants' Motions to Dismiss (Dkt. 122, 125, 126, 130, 131, & 133).[1] First, Relator fails to plausibly allege that any of the Practice Defendants possessed the requisite scienter to violate the Anti-Kickback Statute ("AKS"). To violate the AKS, a defendant must act willfully. In other words, a defendant must know its conduct is unlawful. But here, Relator pleads no facts from which an inference can be drawn that any Practice Defendant believed the contract it entered with Cardinal was unlawful. Allowing this case to proceed would undermine the essential purpose of the heightened scienter element of the AKS—separating innocent from unlawful conduct.

Not only is scienter missing, but Relator's Amended Complaint also fails to satisfy other AKS requirements under the False Claims Act ("FCA"). The primary purpose of the AKS is to prevent money from corrupting medical judgment and causing overutilization of medical services

---

[1] The Practice Defendants are Birmingham Hematology and Oncology Associates, LLC, Oncology Specialties, PC, Dayton Physicians, LLC, Northwest Medical Specialties, PLLC, and Health First Medical Group, LLC.

paid for by government programs. This action does not serve this purpose. Instead, Relator has filed a redundant lawsuit against the Practice Defendants repeating allegations previously leveled in another complaint against the very business unit that Relator led at Cardinal. Relator's allegations fail not only because they are repetitive of the prior suit and, accordingly, violate the FCA's first-to-file rule, but also because Relator's allegations make clear that Relator cannot demonstrate that any alleged kickback *resulted* in claims submitted to the government. Relator's reverse false claims act and conspiracy causes of action fare no better, and the Court should dismiss Relator's Amended Complaint.

## ARGUMENT

### I.   Relator's Amended Complaint Fails to Adequately Allege Scienter.

#### A.  Relator Attempts to Improperly Lower the Scienter Standard.

Relator must allege sufficient facts showing that each Practice Defendant acted "knowingly *and* willfully." *See* 42 U.S.C. § 1320a-7b(b)(1) (emphasis added). Willfulness means that each Practice Defendant acted with an intent to do something unlawful.[2] *Bryan v. United States*, 524 U.S. 184, 191-92 (1998) ("As a general matter . . . a 'willful' act is one undertaken with a 'bad purpose.'"); *see also United States v. Bay State Ambulance & Hosp. Rental Serv., Inc*., 874 F.2d 20, 33 (1st Cir. 1989). Willfulness is a rigorous requirement that must be strictly enforced. *U.S. ex rel. Jones v. Brigham & Women's Hosp*., 678 F.3d 72, 85 (1st Cir. 2012).

In his Opposition, Relator attempts to shortchange the willfulness requirement by relying on a case from the Fifth Circuit that defined willfulness as only requiring the defendant's conduct

---

[2] Contrary to Relator's characterization in his Opposition, the 2010 amendments to the AKS did not eliminate the need to allege a specific intent offense—they just eliminated the need to allege that the defendant knew its conduct violated the AKS specifically. *See U.S. ex rel. Hart v. McKesson Corp*., 602 F. Supp. 3d 575, 594 (S.D.N.Y. 2022) (discussing the effects of the 2010 amendments on the AKS scienter standard). Relator must still allege enough facts to support a plausible inference that the Practice Defendants acted with an intent to do something unlawful. *Id.* (holding that the willfulness requirement maintained this definition even after the 2010 amendments).

not be negligent or accidental. Relator Opp. at 19-20 (citing *United States v. St. Junius*, 739 F.3d 193, 210 (5th Cir. 2013)). This case has been rejected by federal courts across the country and even called into question by the Fifth Circuit itself. *U.S. ex rel. Hart v. McKesson Corp.*, 602 F. Supp. 3d 575, 594-95 (S.D.N.Y. 2022) (rejecting low scienter standard articulated in *St. Junius* and collecting AKS cases that disagree with *St. Junius*, including subsequent Fifth Circuit cases).

Indeed, most circuit courts to address this issue have rejected Relator's position, including the First Circuit.[3]  Willfulness requires relators to prove that defendants knew their conduct was unlawful. *See McKesson*, 602 F. Supp. 3d at 595 (collecting cases that applied traditional definition of willfulness in AKS cases, including *United States v. Teva Pharms. USA, Inc*., 560 F. Supp. 3d 412, 421-22 (D. Mass. 2021)). Relator's interpretation effectively collapses the "knowingly" and "willfully" standards into one inquiry, gutting an otherwise rigorous requirement and failing to give full effect to statutory language. The Court should reject Relator's position.

### B.  Relator Relies on Conclusory and Implausible Allegations of Scienter.

Relator must allege specific facts from which the Court can infer that each Practice Defendant realized its business arrangement with Cardinal was illegal but knowingly and willfully entered the arrangement anyway. Although Relator may allege scienter generally, this is not a free pass around the strictures of Rule 8, and Relator falls far short of this burden. The Amended Complaint fails to allege non-conclusory facts that create plausible inferences that each Practice Defendant acted knowingly *and* willfully.

Relator first argues that scienter is adequately alleged because the Practice Defendants had a general awareness of AKS requirements, as shown by certifications the Practice Defendants

---

[3] *See Bay State Ambulance*, 874 F.2d at 33 (upholding jury instruction that defined willfulness as doing "something purposely, with the intent to violate the law, [doing] something purposely that law forbids"); *United States v. Goldman*, 607 F. App'x 171, 174-75 (3d Cir. 2015); *United States v. Nagelvoort*, 856 F.3d 1117, 1126 (7th Cir. 2017); *United States v. Jain*, 93 F.3d 436, 441 (8th Cir. 1996).

signed to receive reimbursements from the U.S. Centers for Medicare & Medicaid Services ("CMS"). Relator Opp. at 20-21. This argument is routinely rejected in FCA cases. *See, e.g.*, *U.S. ex rel. Fitzer v. Allergan*, No. 1:17-cv-00668-SAG, 2021 WL 4133713, at *8 (D. Md. Sept. 10, 2021) ("The fact that Defendants were aware of the AKS and its requirements says nothing about whether they were acting with an unlawful intent[.]").[4] General awareness of the AKS cannot support an inference that each individual Practice Defendant knew this *particular course of conduct* was unlawful. *McKesson*, 602 F. Supp. 3d at 596 (dismissing FCA complaint for lack of scienter because general knowledge of the AKS "cannot alone support a finding that [defendant] knew this particular course of conduct was unlawful"). It is patently unreasonable to infer that blanket regulatory certifications equate to specific knowledge that the upfront payments were illegal kickbacks.

Relator next argues that scienter is adequately alleged because Cardinal attempted to hide "the true nature" of the upfront payments. Relator Opp. at 22-23. But, contradictorily, the Amended Complaint alleges that Cardinal openly advertised the upfront payments to the Practice Defendants and the medical industry at large. *See* Am. Compl. ¶ 78 (alleging that Cardinal "leverage[d] these payments into a *massive* capture of market share") (emphasis added); *id.* ¶ 93-94 (alleging that Cardinal's competitors knew about the upfront payments and even began to offer competing upfront payments)[5]; *id.* (alleging that several large companies began to do business with

---

[4] *See also U.S. ex rel. Hart v. McKesson Corp.*, No. 15-CV-0903 (RA), 2022 WL 1423476, at *12 (S.D.N.Y. May 5, 2022) ("[A]lleging that a defendant had a general awareness of the laws regulating the pharmaceutical industry is not enough to establish scienter. There must be facts from which the Court can infer that Defendants knew the conduct was unlawful and proceeded with the business practice regardless."); *U.S. ex rel. Complin v. N.C. Baptist Hosp.*, No. 09-CV-00420, 2016 WL 7471311, at *14, *17 (M.D.N.C. Dec. 28, 2016) (refusing to infer scienter based on allegations that hospital was, or should have been aware, of relevant laws and regulations governing federal health care reimbursements), *report and recommendation adopted*, 2019 WL 430925 (M.D.N.C. Feb. 4, 2019).

[5] In his Opposition, Relator argues that the "unusual" nature of the upfront payments should have "warned" the Practice Defendants that the payments were illegal. Relator Opp. at 21. This directly contradicts his allegation in the Amended Complaint that competitors of Cardinal also offered upfront payments. *See* Am. Compl. ¶ 94.

Cardinal because of the upfront payments). Each Practice Defendant even entered contracts detailing the exact nature of the upfront payments. *Id.* at 31-44. Such open advertising negates any inference that the Practice Defendants believed the upfront payments were illegal, and it instead suggests that the Practice Defendants believed the payments were in fact lawful. *See McKesson*, 602 F. Supp. 3d at 596 (finding that defendant's open advertisement of alleged kickbacks undermined any inference of scienter because it suggested defendant believed the payments were lawful); *United States v. Valley Campus Pharmacy, Inc.*, No. 2:16-CV-04777 (MCS) (PLA), 2021 WL 5406148, at \*3 (C.D. Cal. Oct. 12, 2021) (same); *United States v. Novartis AG*, No. 04CV4265NGGRLM, 2011 WL 13234720, at \*9 (E.D.N.Y. Feb. 8, 2011) (same). AKS cases where scienter *is* adequately alleged require that defendants take significant steps to conceal the kickbacks, including refusing to reduce the illegal business arrangements into writing. *McKesson*, 602 F. Supp. 3d at 596 (collecting cases).

In sum, there is no well-pled allegation that a single employee of any of the Practice Defendants knew or believed that the upfront payments were illegal. Relator's unfounded conclusions to the contrary cannot change that. *Fitzer*, 2021 WL 4133713, at \*8 ("Relator may not simply conclude that Defendants acted with an unlawful purpose; he must allege specific facts that support an inference that Defendants were, in reality, acting with that purpose."). The Amended Complaint should be dismissed for failure to adequately allege scienter.

## II. Relator's Amended Complaint Fails to Plead that an AKS Violation Resulted in False Claims.

### A. Relator Does Not and Cannot Sufficiently Allege But-For Causation.

Relator claims that the First Circuit addressed the standard for causation in *Guilfoile v. Shields*, 913 F.3d 178, 189 (1st Cir. 2019). This is not the case. In *Guilfoile*, the First Circuit emphasized that "the issue before us is not the standard for proving an FCA violation based on the

AKS, but rather the requirements for pleading an FCA retaliation claim." *Id.* at 190. As the Court explained therein, the standards are different for alleging a retaliation claim compared to a "direct" FCA violation. In a retaliation case, one need not plead that the AKS caused submission of a false claim because the standard is whether the plaintiff has "plead that their actions in reporting or raising concerns about their employer's conduct 'reasonably could lead to an FCA action.'" *Id.* at 189.

There are, however, no retaliation claims here against the Practice Defendants.  Moreover, Relator cites *Guilfoile*'s reference to *Greenfield* completely out of context. The First Circuit's citation to *Greenfield* was merely for the point that "*if* there is a sufficient causal connection between an AKS violation and a claim submitted to the federal government," then the claim is false, without need to prove additional falsity. *Id.* at 190 (emphasis added). When the First Circuit resolved *Guilfoile*, the Third Circuit in *Greenfield* was the only circuit to have yet addressed a question regarding the standard for causation. *Cairns*, issuing approximately three years after the First Circuit decided *Guilfoile*, was not available for consideration. *See U.S. ex rel. Cairns v. D.S. Med. LLC*, 42 F.4th 828 (8th Cir. 2022). Accordingly, contrary to Relator's claim, the standard for causation in an FCA case is far from decided in the First Circuit.

Relator's Opposition also ignores the continuing circuit court movement toward interpreting the "resulting from" language of the AKS to mean "but for" causation. In March of this year, in *U.S. ex rel. Martin v. Hathaway*, the Sixth Circuit addressed causation, finding that "the ordinary meaning of 'resulting from' is but-for causation . . . That understanding applies unless strong textual or contextual indications indicate a contrary meaning . . . Congress added the 'resulting from' language in 2010, against the backdrop of a handful of cases that observed similar

language as requiring but-for causation." 63 F.4th 1043, 1052 (6th Cir. 2023) (quotations and alterations omitted). The Sixth Circuit unanimously denied a petition for *en banc* review.

As was the case in *Martin*, here "the alleged scheme did not change anything . . . There's not one claim for reimbursement identified with particularity in this case that would not have occurred anyway, no matter whether the underlying business [issue] occurred or not." *Martin*, 63 F.4th at 1053. Accordingly, the Practice Defendants suggest "but-for" causation as applied by most circuits to address the question, is the right standard here.

### B. Relator's Claims Fail Even Under *Greenfield*.

As discussed in the Motion to Dismiss, this case is distinguishable from cases like *U.S. ex rel. Bawduniak v. Biogen Idec, Inc.*, No. 12-CV-10601-IT, 2018 WL 1996829 (D. Mass. Apr. 27, 2018). And, even if the proper standard for causation is "some causal link beyond merely temporal proximity, but short of but-for causation," *see Kuzma v. N. Ariz. Healthcare Corp.*, No. CV-18-08041-PCT-DGC, 2022 WL 2159027, at *10 (D. Ariz. June 15, 2022), the Court nonetheless should dismiss the Amended Complaint.

Relator cites two opinions (decided before *Cairns* and *Martin*) in support of his claim that the Amended Complaint adequately pleads causation, but the allegations at issue in those cases differ from the facts alleged here. In both *Teva*, 560 F. Supp. 3d at 422 and *United States v. Regeneron Pharms., Inc.*, No. CV 20-11217-FDS, 2020 WL 7130004, at *11 (D. Mass. Dec. 4, 2020), the alleged schemes involved pharmaceutical manufacturers disguising copay waivers as charitable donations, and directly "removing financial considerations . . . from patients' decision-making" with respect to specific drugs produced by the companies paying the copays. *Regeneron*, 2020 WL 7130004, at *11. Knowledge that a certain manufacturer would cover copays directly influenced physician judgment because, "[a]ccording to the complaint [in *Regeneron*], when

physicians knew that copay assistance was not available for [defendant's drug], they often prescribed the cheaper [competitor drug], in order to avoid the risk of burdening their patients with expensive copays or being unable to collect the copays." *Id.* at *2.

In his Opposition, Relator confuses the portion of the *Regeneron* holding finding that the relator demonstrated scienter—*i.e.*, that the *purpose* of the copay waivers was to induce scripts, regardless of whether the physicians would have written the scripts anyway—with the requirements for causation. To demonstrate causation, Relator must allege a "sufficient causal connection" between the AKS violation and an actual claim submitted to the government. *Teva*, 560 F. Supp. 3d at 422 (citing *Guilfoile*, 913 F.3d at 190).

And importantly, despite citing *Greenfield* in both *Teva* and *Regeneron*, the court found that the pleadings alleged facts that demonstrated the equivalent of "but for" causation, even if "but for" is not required. *See id.* ("The government has alleged, in sufficient detail, a scheme by which [defendant] *practically guaranteed* that its own donations would result in the submission of Medicare claims for [defendant's drug].") (emphasis added); *Regeneron*, 2020 WL 7130004, at *14 (holding that physicians would not prescribe defendant's drugs without copay subsidies, and "*but for* defendant's contributions, patients would not receive [defendant's drug] copay subsidies") (emphasis added).[6]  The logic for both cases is simple.  For every Medicare drug claim, there is a copay.  No copay subsidy means no claims.  The causal link in these cases is clear.

Not so in this case.  There is no allegation that the alleged remuneration had any effect on a claim.  Physicians prescribe drugs based on patient need, and claims are submitted to Medicare.

---

[6] Relator also cites *U.S. ex rel. Jamison v. McKesson Corp.*, No. 208CV214 SA DAS, 2009 WL 3176168, at *1 (N.D. Miss. Sept. 29, 2009), *on reconsideration*, No. 2:08CV214-SA-DAS, 2010 WL 1223876 (N.D. Miss. Mar. 25, 2010) for the point that "wholesalers" are not outside the scope of the AKS. This out-of-circuit district court opinion addresses claims alleged pursuant to the version of the AKS in place before the 2010 amendments and does not explain the requirements for pleading causation since Congress added the "resulting from" causation requirement to 42 U.S.C. § 1320a-7b(g). As a result, *Jamison* has no relevance to the facts of this case.

Multiple drug wholesalers sell the same drugs. Whether a drug is purchased from Cardinal or one of its competitors has no effect on whether the claims are submitted. Thus, any alleged inducement to buy the drugs from one source over another has no effect on the claim. For these reasons, regardless of the causation standard applied, the Court should dismiss the Amended Complaint.

## III.   Relator's Amended Complaint Violates the FCA's First-to-File Bar.

### A.   The First-To-File Bar Does Not Require Complete Identity of Defendants.

Relator claims the same defendants must be named in the first-filed and any subsequently filed complaint for the Court to dismiss the Amended Complaint pursuant to the first-to-file bar. He is wrong. "[B]ecause the purpose of the FCA's first-to-file provision is to prevent the filing of more qui tam suits once the government already has been made aware of the potential fraud perpetrated against it . . . the fact that the later action names different or additional defendants is not dispositive as long as the two complaints identify the same general fraudulent scheme." *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 517 (6th Cir. 2009), *abrogated on other grounds by U.S. ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813 (6th Cir. 2021) (internal quotations omitted).

The first-to-file bar is meant to further the "goal of avoiding piecemeal and duplicative litigation that does not advance the government's investigation of alleged fraud." *U.S. ex rel. Kelly v. Novartis Pharms. Corp.,* 827 F.3d 5, 11-12 (1st Cir. 2016). In the words of the First Circuit, "[s]imply put, once the government gets sufficiently valuable information from a qui tam complaint about the same fraud alleged by a follow-on complaint, the purposes of the first-to-file rule have been fully served." *U.S. ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Baxter Healthcare Corp.*, 772 F.3d 932, 942 (1st Cir. 2014).

Here, the first-filed complaint ("Omnihealth Complaint") detailed the contractual relationship between Cardinal and its customers.  In a case alleging kickbacks, there are necessarily

two sides to the exchange—the payer and receiver. Although the alleged receivers were not identified in the OmniHealth Complaint, it was inevitable that the government would identify them during the investigation.  In fact, the government did just that.

In its settlement agreement with Cardinal, the government identified 38 practices that had these contracts with Cardinal. Most of these practices were *not* identified by Relator in his second-filed complaint. *See* Dkt. 129, Ex. A.  Thus, the government clearly had enough information to identify the Practice Defendants based on the first-filed complaint. Although the OmniHealth Complaint focused on Cardinal, it "put the government on notice to investigate the fraudulent scheme alleged," *i.e.*, that Cardinal was purportedly violating the AKS through its contracts with physician practices, such that "the government [was already] aware of the essential or material facts of the scheme" and "had enough information to discover any related fraud." *U.S. ex rel. Szymoniak v. ACE Secs. Corp.*, No. 0:13-CV-00464-JFA, 2014 WL 1910876, at *5 (D.S.C. May 12, 2014). Necessarily, the government had the ability to determine the identity of the practices participating in Cardinal's alleged scheme based on information in the OmniHealth Complaint. *See United States v. Medco Health Sols., Inc.*, No. CV 11-684-RGA, 2017 WL 63006, at *11 (D. Del. Jan. 5, 2017).

For these reasons, explained more fully in the Motions to Dismiss, the Court should dismiss the Amended Complaint on first-to-file grounds and deny leave to amend as futile.

## IV.    Relator Fails to Properly Allege Reverse False Claims.

Liability for a reverse false claim cannot exist in the absence of an "obligation" to pay the government. *See* 31 U.S.C. § 3729(a)(1)(G). As discussed in the Motion to Dismiss, such an "obligation' may not arise from the same conduct that gives rise to conventional FCA claims. Dkt.

129 at 33. Because Relator impermissibly bases his reverse false claim count on the same conduct giving rise to his other FCA claims, he has failed to plead the existence of an "obligation."

In his Opposition, Relator does not contest the "well settled" notion "that reverse false claims may not be based on the same conduct as a plaintiff's claims under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B)." *United States v. Lab. Corp. of Am. Holdings*, No. 9:14-CV-3699, 2019 WL 236799, at *3 (D.S.C. Jan. 16, 2019) (internal quotations omitted). Instead, Relator claims that, even though they involve the same government payments, his "reverse false claims allegations are distinct from [his] presentment and false record allegations." Relator Opp. at 28. According to Relator, his reverse false claim allegations are distinct because they rely on an alternative theory that the Practice Defendants did not know their claims were illegal until *after* the claims were paid. *See id.* But reverse false claim counts alleging an obligation to repay the government—including those that courts largely agree are "redundant" and impermissible—*always* and *necessarily* rely on a defendant's knowledge *after* the government pays a claim. *See* Dkt. 129 at 23-24. The purported distinction raised by Relator is really no distinction at all.

Furthermore, this Court has specifically rejected attempts to characterize the payments at issue in ongoing false-presentment and false-statement lawsuits as "overpayments" giving rise to "obligations" for the purposes of an alternative reverse false claims count. *U.S. ex rel. Martino-Fleming v. S. Bay Mental Health Ctr., Inc.*, No. 15-13065, 2018 WL 4539684, at *6 (D. Mass. Sept. 21, 2018). According to this Court, any "obligation" arising from such an "overpayment" is "merely potential or contingent," and thus not subject to reverse-false-claim liability. *Id.* (internal quotations omitted). Although Relator attempts to distinguish several aspects of *Martino-Fleming*, *see* Relator Opp. at 30, he makes no attempt to explain why this key holding would not apply to his reverse false claim count.

11

Relator ultimately fails to sufficiently allege any "obligation" that can support his reverse false claim count, but other portions of Relator's Opposition also warrant addressing because they highlight his plainly untenable theory of reverse false claims liability. According to the Complaint, "Cardinal Health admitted" in its settlement agreement that the claims at issue in this case violated the AKS. Relator Am. Compl. ¶ 164. This purported admission, according to Relator, placed the Practice Defendants on actual notice that they received overpayments from the government, giving rise to an "obligation." *Id.*

In his Opposition, however, Relator does not seriously defend his allegation that Cardinal "admitted" its agreements with Practice Defendants were illegal. Indeed, Relator now contends that whether Cardinal made such an admission "is of no moment here." Relator Opp. at 31. What matters, according to Relator, is the fact that Cardinal settled. *See id.* ("The question here is what information was enough to trigger [Practice Defendants'] obligation to identify an overpayment, and the government's publicly stated allegation and $13.25 million settlement for the very payments that [Practice Defendants] accepted is more than enough to trigger that obligation."). In other words, Relator argues that in an FCA case involving conventional FCA claims against several parties, a decision by one party to settle such claims can trigger an additional FCA cause of action against the remaining non-settling defendants. Essentially, Relator argues that continuing to defend oneself against claims of fraud may in and of itself be an act of fraud giving rise to reverse false claims.

Relator cannot point to any authority that supports his wildly capacious interpretation of what constitutes a reverse false claim, and thankfully so. Any court giving credence to such an interpretation would essentially be placing its imprimatur on a regime of coercion. If Relator's theory is correct, every conventional FCA case involving multiple defendants is just one settlement

agreement away from reverse false claims counts against the other defendants who decided not to settle. Furthermore, Relator offers no reason why his theory that public settlements "trigger . . . an obligation" by co-defendants to "identify an overpayment" would not also be true as to FCA complaints in general.  If Relator's theory is correct, every FCA complaint could be amended as a matter of course to include a reverse false claim count if any defendant failed to automatically settle and pay the contested claims 60 days after receiving service of the complaint. Surely the "publicly stated allegation[s]" listed in the Complaint would be just as sufficient as the same allegations contained in a settlement agreement. *See* Relator Opp. at 31. This Court should reject Relator's unorthodox interpretation of the reverse false claim statute and accordingly dismiss Count III.

## V.   Relator's Conspiracy Count Must Be Dismissed For Failure to Allege a Single, Overarching Conspiracy.

Relator does not even attempt to defend the sufficiency of his overarching conspiracy claim. Instead, he suggests that whether the Complaint alleges one conspiracy or multiple conspiracies is nothing but "a procedural quibble with no substantive impact." Relator Opp. at 32.

The Complaint plainly (albeit insufficiently) attempts to allege a *single* conspiracy amongst all Practice Defendants and Cardinal, who is not a defendant to this case. Count IV twice refers to "Defendants' conspiracy" (singular) and never speaks of multiple conspiracies. Relator Am. Compl. ¶¶ 192-93. Indeed, the Complaint's *entire basis* for joinder of Relator's claims against Practice Defendants was the alleged existence of a *single* conspiracy. *Id.* at ¶ 17. Relator appears to acknowledge as much, admitting that his Complaint may need to be "rephrased as multiple counts[,] one for each defendant's conspiracy with Cardinal[.]" Relator Opp. at 32. Relator even "requests leave to amend' the Complaint to make such revisions. *Id.* But Relator's purported motion for leave to yet again amend his pleading is not properly before this Court. *See generally*

L.R. 7.1. Practice Defendants will address Relator's request to amend if and when it is properly presented, or when this Court otherwise requires. For now, Practice Defendants focus on the allegations contained in the operative pleading only. And Count IV of the operative pleading alleges a single, overarching conspiracy.

Relator *does* attempt to defend against the Practice Defendants' argument that the conspiracy count fails to allege that Practice Defendants specifically intended to defraud the government. But rather than argue that the Complaint satisfies this requirement, Relator argues that this requirement has not existed since the FCA was amended in 2009. Relator Opp. at 33. Practice Defendants cited a myriad of post-amendment cases holding to the contrary, *see* Dkt. 129 at 30-31. Relator neither distinguishes those cases nor cites to any case applying his preferred interpretation. Indeed, the only post-amendment case he cites, *United States v. Karron*, did not even involve an FCA conspiracy claim. *See* 750 F. Supp. 2d 480, 486 n.4 (S.D.N.Y. 2011) (noting that only false-presentment and false-statement claims were at issue). In any event, whether Relator is correct on this point is irrelevant because he has all but conceded that his Complaint fails to meet the other requirements for pleading an overarching conspiracy.

Finally, Relator contends that whether he has adequately alleged a single, overarching conspiracy has no bearing on whether joinder of the Practice Defendants is appropriate. Relator Opp. at 33. Relator's contention is belied by his own Complaint, which relies on a single "conspiracy" as its basis for joinder. Relator Am. Compl. ¶ 17. Furthermore, defendants may not be joined to a single action unless, among other things, "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 21(a)(2)(A). While an

overarching conspiracy may plausibly satisfy such a requirement, separate conspiracies involving different defendants and distinct "transactions" and "occurrences" do not.

Without an overarching conspiracy, this Court will be faced with a situation similar to the one it encountered in *U.S. ex rel. Health Outcomes Techs. v. Hallmark Health Sys., Inc.*, 409 F. Supp. 2d 43 (D. Mass. 2006), which Defendant Oncology Specialties, PC discussed at length in briefing its supplemental motion to dismiss. *See* Dkt. 134 at 5-6. In that case, this Court rejected the notion that the FCA's venue statute permitted FCA defendants "accused of similar, but unrelated conduct, [to be] sued in the same district" when the relator "failed to allege a conspiracy, concert of action, communication, contract, joint or several liability between (or any kind of relationship among)" the defendants. 409 F. Supp.2d at 47-48 (quoting John T. Boese, *Civil False Claims and Qui Tam Actions* (2d ed.) § 5.06[A][1]). Relator does not and cannot distinguish this case from *Health Outcomes*.

## CONCLUSION

For the reasons set forth in their Motions to Dismiss and this Reply, the Practice Defendants respectfully request that the Court dismiss all claims asserted against them in the Amended Complaint with prejudice and deny Relator any opportunity to further amend.

Dated: June 23, 2023                                  Respectfully submitted,

*/s Jonathan H. Ferry*

Dana C. Lumsden, Esq. [BBO# 631493]
Jonathan H. Ferry, Esq.*admitted pro hac vice*
Bradley Arant Boult Cummings LLP

214 North Tryon Street, Suite 3700
Charlotte, North Carolina 28202
(704) 338-6000 (Tel)
(704) 332-8858 (Fax)
dlumsden@bradley.com
jferry@bradley.com

COUNSEL for the DEFENDANT
BIRMINGHAM HEMATOLOGY
& ONCOLOGY ASSOCIATES, LLC

*/s Thomas W.H. Buck, Jr*

Anthony A. Joseph (admitted *pro hac vice*)
Thomas W.H. Buck, Jr. (admitted *pro hac vice*)
Maynard Nexsen PC
1901 6th Avenue North
Suite 1700
Birmingham, AL 35213
204.254.1000
ajoseph@maynardnexsen.com
tbuck@maynardnexsen.com

Giselle J. Joffrey (BBO #658047)
Jonathan Bard (BBO #696819)
Foley Hoag LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
671.832.3061
gjoffre@foleyhoag.com
ybard@foleyhoag.com

COUNSEL for the DEFENDANT ONCOLOGY
SPECIALTIES, PC

*/s Torrey K. Young*

Torrey K. Young (BBO #682550)
Mukasey Frenchman LLP
570 Lexington Avenue, Suite 3500
New York, New York 10022
(212) 466-6400
torrey.young@mfsllp.com

Robert T. Rhoad (*pro hac vice*)
Haaleh Katouzian (*pro hac vice*)
Nichols Liu LLP

16

655 15th Street NW, Suite 425
Washington, DC 20005
(202) 846-9800
rrhoad@nicholsliu.com
hkatouzian@nicholsliu.com

COUNSEL for the DEFENDANT
HEALTH FIRST MEDICAL GROUP, LLC

*/s Matthew J. Modafferi*

Matthew J. Modafferi (admitted pro hac vice)
Frier & Levitt, LLC
101 Greenwich Street, Suite 8B
New York, NY 10006
Tel: (646) 970-6882
Fax: (646) 524-5027
mmodafferi@frierlevitt.com

COUNSEL for the DEFENDANT NORTHWEST
MEDICAL SPECIALTIES, PLLC

*/s Alison C. Casey*

Alison C. Casey (BBO # 688253)
Barnes & Thornburg LLP
One Marina Park Drive, Suite 1530
Boston, MA 02210
Tel: (617) 316-5322
acasey@btlaw.com

Michael H. Gottschlich (*pro hac
vice*)
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 46204
Tel: (317) 231-7834
mgottschlich@btlaw.com

Anthony J. Burba (*pro hac vice*)
Barnes & Thornburg LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Tel: 312-338-5908
aburba@btlaw.com

17

COUNSEL for the DEFENDANT DAYTON PHYSICIANS LLC, D/B/A DAYTON PHYSICIANS NETWORK

**<u>CERTIFICATE OF SERVICE</u>**

 I hereby certify that this document filed today through the Court's ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that I will cause paper copies of this document to be sent by U.S. Mail to those indicated as non-registered participants on June 23, 2023.


             */s Jonathan H. Ferry*
             Jonathan H. Ferry